FILED

2013 Oct-10  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WENDELL TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:12-cv-2648-LSC |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.      Introduction

The plaintiff, Wendell Turner, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Turner timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Turner was fifty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a tenth grade education. (Tr. at 82, 106.) His past work experiences include employment as a chicken catcher and punch press operator. (Tr. at 102, 123-31.) Mr. Turner claims that he became disabled on April 10, 2008, due to chronic obstructive pulmonary disease ("COPD") and "back

problems." (Tr. at 82-83, 96, 101.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Turner meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 21.) He further determined that Mr. Turner has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff has the following "severe" impairments: degenerative joint disease of the cervical spine at C2-7 with spondylosis with neural foraminal narrowing at C4-5 and C6-7 secondary to osseous

encroachment, and facet hypertrophy at C2-3; a truncated nerve root on the left at

L5-S 1 involving S1 nerve root; facet joint hypertrophy at L4-5 and L5-S1, worse on

the left; chronic obstructive pulmonary disease; hypertension; and non-obstructive

coronary artery disease. (Tr. at 22.) However, he found that these impairments

neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (Tr. at 23.) The ALJ did not find Mr. Turner's allegations to

be totally credible, and he determined that he has the following residual functional

capacity:

> He could lift, carry, and pull 50 pounds occasionally and 25 pounds
> frequently. He could stand and/or walk with normal breaks for a total of
> six hours and sit with normal breaks for a total of six hours in an
> eight-hour workday. He frequently could climb ramps and stairs;
> balance; stoop; and kneel; and occasionally could crouch or crawl. He
> could not work on ladders, ropes, or scaffolds. He should avoid
> concentrated exposure to extreme cold or heat; fumes, odors, dust,
> gases, or poor ventilation; hazardous machinery; or unprotected heights.

(*Id.*)

According to the ALJ, Mr. Turner is capable of performing his past relevant

work as punch press operator. (Tr. at 26.) He is an "individual closely approaching

advanced age," and he has a "limited education," as those terms are defined by the

regulations. (*Id.*) He determined that Plaintiff has "no transferable skills from any past

relevant work and/or transferability of skills is not an issue in this case." (Tr. at 27.) Even though Plaintiff cannot perform the full range of medium work, the ALJ used Medical-Vocation Rule 203.18 as a guideline for finding in the alternative that there are a significant number of jobs in the national economy that he is capable of performing, such as hand packager, assembler, and stock clerk. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 28.)

II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with

considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles,* 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Mr. Turner alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ improperly considered his receipt of unemployment benefits as raising "severe credibility issues." (Doc. 10 at 13.) Second, Plaintiff contends that the ALJ did not afford proper consideration to his exercise tolerance when he made his RFC assessment.  (Doc. 10 at 17.)

A.     Plaintiff's Receipt of Unemployment Benefits in Connection with the ALJ's Evaluation of Plaintiff's Credibility

Disability benefits may not be paid solely on the basis of a claimant's own self-serving complaints. See: 42 U.S.C §§ 423 (d)(5)(A), 1382c (a)(3)(H)(I) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require An individual's statement as to pain and other symptoms shall not alone be conclusive evidence of disability.") However, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The plaintiff's ability to meet the pain standard is just a threshold inquiry. The ALJ is still permitted to discredit Plaintiff's subjective testimony of pain and other

symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the Eleventh circuit's pain standard when he considered the plaintiff's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the plaintiff's subjective complaints were inconsistent with the medical record. *Id.* at 1212. In addition, in *Sheldon v. Astrue*, the court held that a plaintiff's failure to seek medical treatment is relevant in assessing credibility. 268 F. App'x 871, 872 (11th Cir. 2008).

In the instant case, the ALJ properly applied the Eleventh Circuit's pain standard when he found that Plaintiff's "medically determinable impairment could reasonably be expected to produce the symptoms [Plaintiff] alleges." (Tr. at 24.) However, he further determined that Plaintiff's statements "concerning the intensity,

persistence and limiting effects of the alleged symptoms are not entirely credible because they are not consistent with either the objective medical evidence or other evidence of record." (*Id*).

Plaintiff takes issue with the ALJ's determination that his receipt of unemployment benefits until late 2008 is a factor in evaluating Plaintiff's credibility and that it "raises serious credibility issues." (Tr. at 25.) In his brief, Plaintiff quotes extensively from an August 9, 2010, memorandum from Frank Cristaudo, the Chief Administrative Law Judge for the Social Security Administration, to all other administrative law judges, on the Social Security Administration's policy regarding a claimant's receipt of unemployment benefits. (Doc. 11 at 13.) Plaintiff contends that the ALJ's conclusion that receipt of unemployment benefits is a factor undermining Plaintiff's credibility is inconsistent with Cristaudo memorandum. *Id*.

To the contrary, the ALJ's discussion of Plaintiff's receipt of unemployment benefits is consistent with the memorandum. The ALJ recognized, as the memorandum notes, that the receipt of unemployment benefits does not foreclose the receipt of disability benefits. (Tr. at 25-26.) The ALJ concluded, as the memorandum directs, that the receipt of unemployment benefits is one factor in the disability analysis. (Tr. at 26.) Indeed, the memorandum emphasizes that the ALJ must

consider the application for unemployment benefits together with all of the medical and other evidence. The ALJ noted that to be eligible for unemployment benefits in Alabama, an individual must be physically and mentally able to perform work and be available for work. (Tr. at 26.) *See* Ala. Code. § 25-4-77(a)(3). The ALJ additionally recognized that Alabama law contains a provision precluding payment of unemployment benefits where the individual is disabled. (Tr. at 16.) As such, the ALJ noted that Plaintiff was actively pursuing a claim for Social Security benefits based on total disability at the same time that he was receiving benefits that required him to repeatedly assert that he was willing and able to perform work if it were found for him. (*Id*). The ALJ determined that Plaintiff's condition had not changed since his unemployment benefits ceased and that he stopped receiving unemployment benefits only because the benefits ran out. (Tr. at 26.) Plaintiff testified that despite telling the state agency he tried to work, he did not "really" look for work during this time period. (Tr. at 54.)

The ALJ's conclusion that the receipt of unemployment benefits is a factor undermining Plaintiff's credibility is consistent with the Cristaudo memorandum and the great weight of legal authority. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (acknowledging that the receipt of unemployment

benefits is a factor undermining Plaintiff's credibility); *Workman v. Comm'r, Soc. Sec. Admin.*, 105 F. App'x 794, 801-02 (6th Cir. 2004) (per curiam) (unpublished) (disagreeing with the contention that the Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely no role in assessing his subjective complaints of disability); *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994) (holding that applications for unemployment and disability benefits are inherently inconsistent and that inconsistency can be considered in evaluating the claimant's credibility); *Peden v. Comm'r, Soc. Sec. Admin.,* No. 2:12-cv-0081-AKK, 2012 WL 5379172, at *5 (N.D. Ala. Oct. 31, 2012) (finding that ALJ's determination that unemployment application detracted from credibility was supported by substantial evidence). Moreover, *George v. Astrue*, cited by Plaintiff, supports the ALJ's conclusion. *See* No. CV-11-S-3518-M, 2012 WL 3030157, *4-5 (N.D. Ala. July 20, 2012) (finding that the ALJ was entitled to consider the Plaintiff's representations regarding unemployment compensation and ability to work as one factor in evaluating the Plaintiff's credibility). In addition, agency regulations provide that in assessing credibility, the ALJ may consider inconsistencies in the evidence. *See* 20 C.F.R. § 404.1529(C)(4). Plaintiff's testimony that he did not "really" look for work during

the time he was receiving unemployment benefits and that he told the state agency

that he tried working, along with the Alabama requirement that Plaintiff be able and

available for work to receive unemployment benefits, represent significant

inconsistencies that the ALJ was entitled to consider when assessing Plaintiff's

credibility.

In addition to Plaintiff's receipt of unemployment benefits, the ALJ also

considered the medical evidence and Plaintiff's daily living activities, consistent with

20 C.F.R. § 404.1529(c)(3), (4), and *Wilson*, 284 F.3d at 1225-26.  Indeed, the ALJ

noted that credibility "must be determined primarily on the basis of the extent to

which symptoms and allegations are consistent with and supported by the medical

evidence."  (Tr. at 25.)  Here, treatment notes of March 2008 from Dr. Lee,

Plaintiff's cardiologist, show that the plaintiff still had a full-time job "in which he

stamps and molds steel," and that he denied any chest pain. (Tr. at 184.) Dr. Lee also

noted that "there has been no change in his exercise tolerance." (*Id.*)  He found that

Plaintiff is doing "fairly well" from a cardiovascular standpoint. (*Id.*)  He found that

Plaintiff's coronary artery disease appeared stable and that he still appeared to have

Canadian Class I exercise tolerance. (*Id.*) This classification states: "Ordinary physical

activity (such as walking or claiming stairs) does not cause angina. Angina may occur

with strenuous rapid or prolonged exertion at work or recreation." (Tr. at 25.) The

ALJ noted that Plaintiff takes no medication and the record contains no medical

opinion assessing limitations precluding all work activity. (Tr. at 25, 50.) The ALJ also

found that the fact that Plaintiff did not seek treatment at the emergency room for his

pain undermined his credibility.  (Tr. at 25.)  *See Sheldon*, 268 F. App'x at 872 (a

plaintiff's failure to seek medical treatment is relevant in assessing credibility). In

addition, Plaintiff testified that he has a driver's license and drives when he has a

vehicle. (Tr. at 117.) Also, Plaintiff reported cleaning house, doing laundry, and

washing dishes in June 2008. (Tr. at 116.) Similar to *Dyer*, where the Eleventh Circuit

held that the ALJ properly considered Plaintiff's daily activities as a factor to conclude

that the Plaintiff's subjective complaints were inconsistent with the medical record,

here the ALJ properly concluded that these daily living activities are inconsistent with

his allegations of disabling pain. *Dyer*, 395 F.3d at 1210.

Thus, the ALJ's conclusion here that Plaintiff's testimony was not entirely

credible is supported by substantial evidence, including the medical records,

Plaintiff's daily activities, and Plaintiff's receipt of unemployment benefits.

> B.    Plaintiff's Exercise Tolerance in Connection with the ALJ's Assessment
>        of Plaintiff's RFC

Plaintiff next contends that the ALJ's RFC finding is erroneous because the

ALJ failed to consider Plaintiff's exercise tolerance, as assessed by Dr. Lee, Plaintiff's cardiologist. (Doc. 10 at 18.) Plaintiff does not make any other specific challenge to the ALJ's RFC finding and fails to identify any limitations that the ALJ should have included in his RFC, instead broadly asserting that the RFC is not supported by the record as a whole.  Plaintiff's argument lacks merit.

In March 2008, Plaintiff was examined by Dr. Lee, who noted that his coronary artery disease was stable, and that Plaintiff had Canadian Class I exercise tolerance. (Tr. at 184.)  This means that "ordinary physical activity, such as walking or climbing stairs, does not cause angina. Angina may occur with strenuous rapid or prolonged exertion at work or recreation." (Tr. at 25.) Plaintiff contends that the limited range of medium work assessed in his RFC would necessarily involve prolonged exertion at work within the meaning of this classification.  But Plaintiff has offered no support for this argument in the record or otherwise.  At the time Dr. Lee found Plaintiff to have Class I exercise tolerance, Plaintiff was still working as a punch press operator, a past job that the ALJ found he could perform and the vocational expert classified as medium work.  (Tr. at 26, 56, 184.)  Dr. Lee stated that Plaintiff's exercise tolerance had not changed since his previous appointment in June 2007, when Plaintiff was working as a punch press operator.  (Tr. at 131, 185-86.)  Dr. Lee did not indicate any

deterioration in Plaintiff's condition during this time period.  Thus, contrary to Plaintiff's argument, Dr. Lee's finding is not inconsistent with Plaintiff's performing medium work.

With regard to the ALJ's RFC assessment as a whole, the RFC is defined as the most a claimant can still do despite his limitations, and it is assessed based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1), (3). The ALJ recognized that Plaintiff had underlying medical conditions, deeming some of them "severe," but he noted that the medical records do not document the functional limitations that Plaintiff claimed to experience.  The record supports this conclusion.  In January 2008, three months prior to Plaintiff's alleged onset date, Dr. Mark Tafazoli, his treating physician, performed a fluid collection in his right elbow. Other than the elbow, Plaintiff's physical was normal. (Tr. at 174, 176.)  In March 2008, Dr. Lee found Plaintiff to be doing "fairly well" with "relatively low" blood pressure. (Tr. at 184.) In May 2008, one month after his alleged onset date, Plaintiff went to the emergency room complaining of diarrhea. Again, Plaintiff's physical exam was normal. (Tr. at 207-08.) In June and October 2009, Plaintiff reported to the Good Samaritan Health Clinic and his physical examination was normal. (Tr. at 230, 233.) In November 2010, Plaintiff again reported to the Good Samaritan Health clinic and

his physical exam noted an abnormality only with regard to dental health. (Tr. at 339.) The medical records simply do not identify any functional limitations related to Plaintiff's COPD or back problems that would preclude the performance of a limited range of medium work.   Thus, the medical records do not support Plaintiff's allegations and the ALJ's RFC assessment reflects a thorough consideration of all relevant evidence in the record.

IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Turner's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 10th day of October 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]